# IN THE SUPREME COURT OF TEXAS

═══════════

No. 11-0597

═══════════

LEXINGTON INSURANCE COMPANY, AS SUBROGEE OF
BURR COMPUTER ENVIRONMENTS, INC. AND J. SUPOR AND SONS
TRUCKING AND RIGGING CO., PETITIONER,

v.

DAYBREAK EXPRESS, INC., RESPONDENT

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**PER CURIAM**

We grant in part the limited motion for rehearing by respondent Daybreak Express, Inc., withdraw our opinion of August 31, 2012, and substitute the following opinion in its place.

The principal question in this case is whether, for purposes of Section 16.068 of the Texas Civil Practice and Remedies Code, an action for cargo damage against a common carrier, brought under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, relates back to an action for breach of an agreement to settle the cargo-damage claim. The answer depends on whether the cargo-damage claim is, in the words of Section 16.068, "wholly based on a new, distinct, or different transaction or occurrence" than the breach-of-settlement claim. A divided court of appeals held that a cargo-damage claim does not relate back and is therefore barred by limitations.

342 S.W.3d 795 (Tex. App.–Houston [14th Dist.] 2011). We disagree and accordingly reverse the judgment of the court of appeals and render judgment for the plaintiff.

J. Supor and Son Trucking and Rigging Company engaged respondent Daybreak Express, Inc. to transport computer equipment belonging to Burr Computer Environments, Inc. from New Jersey to Texas. When the shipment arrived, Burr claimed it was damaged. Despite Burr's contention that Daybreak's adjuster had agreed on Daybreak's behalf to settle the claim for $166,655, Daybreak would pay only $5,420. Burr also asserted a claim against Supor, whose insurer, petitioner Lexington Insurance Co., paid Burr $87,500. Then, as subrogee, Lexington sued Daybreak, but only for breaching the settlement agreement, not for damaging Burr's equipment.

An interstate carrier's responsibility for goods it transports is governed by the Carmack Amendment. Enacted in 1906, the Carmack Amendment "supersedes all state laws as to the rights and liabilities and exemptions created by such transaction." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913) (internal quotation marks omitted). Because the only action against an interstate common carrier for cargo damage is under federal law, Daybreak removed the case to federal court. It cited *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003), which states:

> Congress intended for the Carmack Amendment to provide *the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier.* Accordingly, we hold that the complete pre-emption doctrine applies. Because the Carmack Amendment provides the exclusive cause of action for such claims, . . . claims [for such loss or damages] "only arise[ ] under federal law and [can], therefore, be removed . . . ."

(emphasis in original, citation omitted). But the federal court distinguished *Hoskins:*

> In the present case, by contrast, Lexington does not seek to impose liability on Daybreak for damages arising from the interstate transport of property. Instead,

2

> Lexington seeks to enforce an agreement it alleges Daybreak entered into in order to settle claims for damages to a shipment of electrical equipment. Resolution of this contract claim does not turn on the rights and responsibilities of Daybreak as a carrier in interstate commerce. The point of the alleged settlement agreement was precisely that Lexington's subrogor would *not* pursue the claims that may fall under the Carmack Amendment. Because this is not a suit to recover for loss or damage to property against a carrier but rather one to enforce a settlement agreement, the case will be remanded to state court.

*Lexington Ins. Co. v. Daybreak Express, Inc.*, 391 F. Supp. 2d 538, 541 (S.D. Tex. 2005) (footnote omitted).

Although Lexington successfully avoided removal by not asserting a cargo-damage claim, on remand, it amended its petition to assert one. Lexington filed its amended pleading more than four years after Daybreak rejected Burr's claim, and Daybreak contended the claim was barred by limitations. But Lexington argued that the cargo-damage claim related back to its original action for breach of the settlement agreement, which was filed within two years of Daybreak's rejection of Burr's claim and not barred by limitations. The relation-back doctrine, codified in Section 16.068, states:

> If a filed pleading relates to a cause of action . . . that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM. CODE § 16.068. The trial court agreed with Lexington, and after a bench trial, rendered judgment against Daybreak for $85,800.

A divided court of appeals reversed. 342 S.W.3d 795 (Tex. App.–Houston [14th Dist.] 2011). The court held that Section 16.068 applies to a Carmack Amendment claim. *Id*. at 803-804.

3

Since the parties do not argue to the contrary, we assume this is correct. The majority then concluded that the cargo-damage and breach-of-settlement claims were based on wholly different transactions, one centering on the transport of Burr's equipment and the other on the existence of a settlement agreement. *Id.* at 804. Further, the court reasoned, if the shipment and settlement were not different transactions, the Carmack Amendment would preempt the breach-of-settlement claim and removal would have been proper.

> The expansive reach of complete preemption under the Carmack Amendment means that ***any*** cause of action arising from the interstate transportation of goods by a common carrier "is either wholly federal or nothing at all" regardless of how it is labeled. . . . Lexington's claim for breach of the purported settlement agreement cannot be both un-preempted and less than wholly distinct from the interstate transportation of goods by a common carrier.

*Id*. at 806 (quoting *Hoskins*, 343 F.3d at 773, emphasis in original, internal quotation marks partially omitted).

"Transaction or occurrence" is a concept fundamental to modern civil procedure. *See, e.g.,* TEX. R. CIV. P. 38 (third-party practice), 40 (joinder), 50 (pleading), 97 (counterclaims and cross-claims); TEX. CIV. PRAC. & REM. CODE § 16.068 (limitations); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex. 1992) (res judicata). The United States Supreme Court has observed that "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926). Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure employs a standard similar to Section 16.068, allowing relation back of a claim, pleaded by amendment, "that arose out of the conduct, transaction, or occurrence

4

set out — or attempted to be set out — in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "[T]he search . . . is for a common core of operative facts in the two pleadings." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 1497 (3rd ed. 2010). "Although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading." *Id*.; *see also* 2 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 10.18 (2d ed. 2002) ("The inquiry applied should be the pragmatic one of notice . . . .").

In the present case, the cargo-damage claim and the breach-of-settlement claim both arose out of the same occurrence: Daybreak's shipment of Burr's computer equipment. The settlement was an effort to reach agreement on the damages recoverable under the Carmack Amendment. Although Lexington might recover on the breach-of-settlement claim without proving the amount of damage to the equipment, that damage was the basis for the settlement agreement. Daybreak might well argue that it is unreasonable to believe that it agreed to pay thirty times more than it actually paid. Daybreak had fair notice that the amount of damage might be in issue, as well as whether an agreement had been reached.

The court of appeals' conclusion that the two claims are based on two separate transactions is contradicted by our decision in *Leonard v. Texaco, Inc.*, 422 S.W.2d 160 (Tex. 1967). There, a surface owner sued the mineral lessee for property damages caused by the lessee's seismic operations. Later, after limitations had run, the surface owner amended his petition to add a claim that the lessee had breached an agreement to pay for the damages, possibly to avoid having to prove negligence. *Id.* at 161, 162; *see Humble Oil & Ref. Co. v. Williams*, 420 S.W.2d 133, 134 (Tex.

5

1967) ("A person who seeks to recover from the lessee for damages to the surface has the burden of alleging and proving either specific acts of negligence or that more of the land was used by the lessee than was reasonably necessary."). In *Leonard*, the surface owner prevailed on the contract claim at trial, but the court of civil appeals reversed, holding under Section 16.068's predecessor, which contained the same relation-back standard, that the contract claim did not relate back to the property damage claim and was therefore barred by limitations. We disagreed. *Id.* at 162. Though the initial claim "sounded in tort and alleged an excessive use of land" and the later claim "set up a promise to pay . . . damages" that sounded in contract, we concluded: "it cannot be said" that the latter was "wholly based upon and growing out of a different transaction or occurrence." *Id*. at 163.

In *Leonard*, as in the present case, one claim centered on damage to property and the other on an alleged agreement to pay for the damage. And in each case, the requirements for proof of the two claims were somewhat different. But the claims in each cases arose out of the same occurrence and involved the same injury to property. *Leonard*'s holding that the two claims were not based on wholly different transactions forecloses the court of appeals' contrary conclusion in this case.

The federal district court's holding that Lexington's breach-of-settlement claim is not preempted by the Carmack Amendment does not compel the conclusion that it is based on a wholly different transaction than the cargo-damage claim. Again, "'[t]ransaction' is a word of flexible meaning." *Moore*, 270 U.S. at 610. Preemption assures uniform, predictable standards of responsibility for common carriers in transactions involving interstate shipments. Relation back allows an untimely claim not wholly based on a different transaction than a timely claim. The two principles serve different purposes.

6

We hold that under Section 16.068, Lexington's cargo-damage claim was not barred by limitations. Accordingly, we grant Lexington's petition for review and, without hearing oral argument, reverse the judgment of the court of appeals and remand this case to that court for further proceedings. Tex. R. App. P. 59.1.

Opinion delivered: January 25, 2013